# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5097 | **DATE** | 12/15/2003 |
| **CASE TITLE** | KAZAROV, ET AL vs. ACHIM, ET AL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Motion (40-1) for class certification is granted subject to modifications. Motion (44-1) to dismiss is granted/denied in part. Counts I and II are dismissed.**
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | DEC 1 6 2003 | |
| | Notified counsel by telephone. | | date docketed | 49 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| DW | courtroom deputy's initials | 03 DEC 15 AM 7:22 Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
DEC 1 6 2003

VADIM KAZAROV AND VOEUTH
LONG, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY
SITUATED,

    Petitioners,

v.

DEBORAH ACHIM, Interim Field
Operations Director for the Chicago District
of the Department of Homeland Security's
Bureau of Immigration and Customs
Enforcement,

    Respondent.

No. 02 C 5097
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Petitioner Vadim Kazarov, pursuant to Federal Rule of Civil Procedure 23, moves for class certification, or, in the alternative, allowing the action to proceed as a representative action, or both.[1] Respondent Deborah Achim, Interim Field Operations Director for the Chicago District of the Department of Homeland Security's Bureau of Immigration and Customs Enforcement ("ICE"), opposes the motion and further moves to dismiss Counts I and II, which pertain to the two named petitioners, Vadim Kazarov and Voeuth Long.[2]

---

[1] Petitioner no longer relies upon Voeuth Long as a class representative.

[2] In his Third Amended Petition, Petitioner identifies numerous government officials and entities as respondents to this habeas action. The only proper respondent to a petition for writ of habeas corpus, however, is Petitioner's immediate custodian, in this case Achim. *See Roman v. Ashcroft*, 340 F.3d 314 (6th Cir. 2003). Accordingly, I am substituting Achim as the sole respondent to this petition.

Factual Background

This action was originally filed on July 18, 2002, when the Midwest Immigration and Human Rights Center ("the Center") filed its original "Class Action for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief." The Center soon filed an amended petition, in which it named the following four aliens as class representatives: Jalal Hmaidan, a native of Kuwait and citizen of Jordan; Mohammed Aidouni, a native and citizen of Algeria; Maitham Alzehrani, a native and citizen of Iraq; Keovongsack Pongphrachanxay, a native and citizen of Laos; and Den Son, a native and citizen of Vietnam. The Amended Petition alleged that these individuals were representative of a class of aliens who were being detained without statutory authority, in contravention of the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), because more than six months had elapsed since their final removal orders, and there was no significant likelihood of their repatriation within the reasonably foreseeable future.[3]

Notwithstanding these allegations, Hmaidan was removed from the United States and repatriated to Jordan on October 31, 2002. Similarly, Aidouni was removed to his native Algeria

---

[3] The Supreme Court's decision in *Zadvydas* largely resolved the legal question of when post-order detention of admitted aliens is authorized by the Immigration and Nationality Act. *Zadvydas* held that, with certain exceptions not pertinent here, § 241(a) of the INA, as amended, does not authorize the indefinite detention of an admitted alien subject to a final removal order beyond that period "reasonably necessary" to secure the alien's removal from the United States. 533 U.S. at 700. For these purposes, the Supreme Court found that post-order detention for a period of six months is "presumptively reasonable," after which time the alien may be subject to release "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and the Government has been afforded an opportunity to rebut that showing. *Id.* at 701. However, release after expiration of the presumptively reasonable six-month period is not automatic: "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

2

on April 4, 2003. The remaining petitioners were released from immigration custody after the former Immigration and Naturalization Service ("INS") concluded that there was no significant likelihood of their repatriation in the reasonably foreseeable future, based upon custody reviews conducted pursuant to the so-called "*Zadvydas*" regulations at 8 C.F.R. § 241.13. On April 16, 2003, on Respondent's motion, I dismissed the individual habeas counts of the First Amended Petition but let stand the class action counts.

The Center made a second attempt to identify aliens who could serve as representatives for the putative class on March 8, 2003, when it filed a Second Amended Petition naming five new representative petitioners: Tayseer Yousef, a native of Isreal and citizen of Jordan; Sothea Bun, a native and citizen of Cambodia; Khan Nguyen, a native and citizen of Vietnam; Touy Prasoeuthsy, a native and citizen of Cambodia; and Alla Aburwaished, a native of Iraq of Palestinian ethnicity, who entered the United States using a Jordanian passport. On June 21, 2003, Respondent moved to dismiss the individual counts of the Second Amended Petition, because all of the named petitioners had been released from ICE custody. At an August 19, 2003, status hearing, Petitioner's counsel agreed that the individual counts were no longer viable. However, I gave the Center an opportunity to file a third amended petition and to move for class certification.

On August 25, 2003, the Center filed a Third Amended Petition in which it named Vadim Kazarov and Voeuth Long, as named petitioner representatives. In the instant motion for class certification, Petitioner does not rely upon Voeuth Long as a class representative because Long was released from ICE custody on September 30, 2003. As of the Center's September 16, 2003 filing of this instant motion, Kazarov was still detained because ICE was making substantial

3

progress in obtaining travel documents for him from the Georgian government. ICE's optimism was justified, as the travel documents were issued, and, on October 21, 2003, Kazarov was removed from the United States to Georgia. Thus, since July 2002, the Center has named no less than twelve aliens as potential representatives of the class it seeks to have me certify. Of these twelve aliens, three – Hmaidan, Aidouni, and Kazarov – have been removed from the United States, and the remaining nine have all been released from ICE custody following repatriation reviews conducted in accordance with agency regulations.

On May 27, 2003, the Center served Respondent with written discovery requests on class certification issues. At a status conference two days later, I declined to order discovery but requested that Respondent disclose the number of aliens currently being detained by ICE's Chicago District who had been subject to final removal orders for more than 180 days. At a June 9, 2003, status conference, Respondent disclosed that, by the most recent count, there were seventeen aliens within the jurisdiction of ICE's Chicago District who had final removal orders and had been in ICE custody for longer than 180 days. Respondent expressly denied that any of these seventeen aliens were being detained unlawfully, under either the regulations or the *Zadvydas* rule. I then asked Respondent to provide Petitioner with a declaration from the ICE deportation officer who compiled the data underlying the number, and to make that officer available for an interview by Petitioner if they had questions concerning his methodology, or what the number purported to represent. On June 16, 2003, Respondent provided the requested declaration by the deportation officer, Officer Jose Louis Zamora, and on June 20, 2003, Petitioner interviewed him. Respondent also allowed Petitioner an opportunity to test the veracity of the information compiled by Zamora by conducting a survey of aliens detained at a

detention center, the Tri-County Jail in Ullin, Illinois. After Respondent proposed parameters for the visit, which were necessary to meet the facility's security requirements, Petitioner orally informed Respondent that he no longer wished to visit the Tri-County Jail. Petitioner has made no other requests of Respondent in his efforts to identify putative members of the class he seeks to have certified.

Motion to Dismiss

Because both Petitioners are no longer in ICE custody, their challenges to their continued detention are now moot. *See Spencer v. Kemna*, 523 U.S. 1, 18 (1998); *Riley v. INS*, 310 F.3d 1253, 1257 (10th Cir. 2002); *Kasza v. Browner*, 133 F.3d 1159, 1172 (9th Cir. 1998); *Camara v. Comfort*, 235 F.Supp.2d 1174, 1175 (D. Colo. 2002). There no longer exists any case of controversy with respect to those detentions, and a case or controversy is required. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 45 (1997); *Chicago & North Western Transp. Co. Railway Labor Executives' Ass'n*, 908 F.2d 144 (7th Cir. 1990); *Wisconsin Winnebago Bus v. Koberstein*, 762 F.2d 613 (7th Cir. 1985).[4] Accordingly, I must dismiss

---

[4] Certain exceptions to the mootness doctrine exist, but none apply here. For example, jurisdiction may still lie where the petitioner would suffer collateral consequences after resolution of the primary injury, or the respondent has voluntarily ceased an allegedly illegal practice but is free to resume it at any time. *See Riley v. INS*, 310 F.3d 1253, 1257 (10th Cir. 2002). However, Kazarov and Long, who were seeking only release from detention, will suffer no collateral consequences from their past immigration detention. Moreover, Respondent has not ceased any illegal practice but has removed Kazarov pursuant to his final removal order, and has determined that Long met his burden of proving that his repatriation to Cambodia is not significantly likely in the reasonably foreseeable future, after completing the post-order custody review. Finally, while an exception to mootness may exist where the plaintiff is a representative of a certified class, that exception does not apply here because no class was certified prior to expiration of Kazarov's and Long's individual claims. *Holstein v. City of Chicago*, 29 F.3d at 1147 (7th Cir. 1994).

Counts I and II of the Third Amended Petition, which exclusively raise detention claims relating to the named petitioners.[5] *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998).

Mootness of Class Allegations

Respondent argues that I need not reach the issue of class certification if I grant its Motion to Dismiss because the class allegations in the Third Amended Petition cannot be adjudicated absent class representatives. *See Kifer v. Ellsworth*, 346 F.3d 1155, 1156 (7th Cir. 2003). However, "the mooting of the class representative's personal claim does not bar him from continuing to represent the class." *Id.* There may be times when a proposed named plaintiff's claims become moot before "the district court can reasonably be expected to rule on a certification motion." *Sosna v. Iowa*, 419 U.S. 393, 402 n. 11 (1975). There are cases in which "state officials will undoubtedly continue to enforce the challenged statute" or continue to utilize a challenged procedure, but "because of the passage of time, no single challenger will remain subject to its restrictions for the period necessary to see such a lawsuit to its conclusion." *Id.* at 400. In such cases involving claims that are "capable of repetition, yet evading review," *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975), I should examine "the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review" in deciding whether to "relate back" the certification to the filing of the complaint and thus avoid mootness,

---

[5] Although the reasons for which I dismiss these Counts have been raised and addressed in prior motions to dismiss filed by Respondent, I recognize that Petitioners have not been afforded the opportunity to respond to the instant motion. Accordingly, I hereby grant Petitioners leave to file a motion for reconsideration should they desire.

*Sosna*, 419 U.S. at 402 n. 11. Courts have found various situations where it is appropriate for mooted named plaintiffs to continue to serve as class representatives.[6]

The present case involves claims that are "capable of repetition, yet evading review." As in *Gerstein*, it cannot be determined at the outset how long any particular class member will be detained. 420 U.S. at 111. To become a member of the class, an individual must have already been detained by the government for six months after a final order of deportation. The length of time a detainee will be kept beyond that point is only speculation. In addition, as in *Dixon*, Respondent has complete control over the release of these individuals. 537 F.Supp. at 993. At any time, a named petitioner could be released by the government, making the claims of that individual moot.

I express no settled view as to whether a government respondent can lawfully moot cases in this way. Although it seems to me that ordinarily it can do this,[7] this case does not seem to present the issue. For one thing, there is no hint that the government has followed such a strategy here. For another, by the time the six months of custody has run, ICE is likely to have made

---

[6] *See, e.g., Sosna*, 419 U.S. at 402 (challenge to state's one-year divorce residency requirement); *Gerstein*, 420 U.S. at 111 (challenge to state procedure whereby person arrested without warrant and charged by information could be jailed without opportunity for probable cause determination); *Dixon v. Quern*, 537 F.Supp. 990, 993 (N.D. Ill. 1982), *vacated on other grounds*, 559 F.Supp. 395 (N.D. Ill. 1984) (challenge to Social Security Administration's failure to notify rejected applicants for supplemental security income of basis for determination of nondisability and failure to provide applicants found nondisabled with a hearing and decision within six months of timely request for such hearing); *Green v. Johnson*, 513 F.Supp. 965, 975 (D. Mass. 1981) (challenge to state's delivery of special education services to inmates under age of 22 incarcerated at county houses of correction).

[7] This may give the government the ability to choose venue, if not to foreclose a lawsuit. The government might release all representative plaintiffs in one district while leaving the issue alive in another.

sufficient progress in efforts at repatriation such that it will be able to repatriate or release from custody well before a decision can be reached. Rather, the system as it now exists seems to mean all cases will perpetually escape review. Accordingly, I hold that this class action is not moot.

Motion for Class Certification

A party seeking leave to proceed on a representative basis in a habeas case, bears the burden of proving that the Federal Rule of Civil Procedure 23 factors are met and that a representative action is appropriate.[8] *See General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982); *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). I have broad discretion in determining whether or not to allow a representative action. *See General Tel. Co.*, 457 U.S. at 161; *Chavez v. Illinois State Police*, 251 F.3d 612, 629 (7th Cir. 2001). Most importantly, each case must be judged on its own facts because each case "involves intensely practical considerations." *See Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988). In short, the motion must be denied, unless I am satisfied, "after a rigorous analysis," that the party seeking such certification has met the prerequisites of Rule 23. *See General Tel. Co.*, 457 U.S. at 161. Furthermore, I have a continuing duty to ensure compliance with Rule 23 and may decertify or modify the class, as appropriate. *See* Fed.R.Civ.P. 23(c)(1) and (4); *General Tel. Co.*, 457 U.S. at 160; *Eggleston v. Chicago Journeyman Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 896 (7th Cir. 1981).

---

[8] Although Federal Rule of Civil Procedure 23 does not technically apply to habeas corpus proceedings, "representative actions for habeas" are permitted in "unusual circumstances," and I may look to Rule 23 "for guidance in determining whether a representative action is appropriate." *Bijeol v. Benson*, 513 F.2d 965, 967-68 (7th Cir. 1975); *see also United States ex rel. Sero v. Preiser*, 506 F.2d 1115, 1125 (2d Cir. 1974).

Rule 23(a)

Under Rule 23(a), a party seeking class certification must show that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Failure to satisfy any one of the requirements of Rule 23(a) requires denial of class certification. *See Retired Chicago Police Ass'n*, 7 F.3d at 956. Respondent does not dispute that the named Petitioner's factual allegations are typical of the proposed class, but she does argue that Petitioner fails to satisfy the remaining three elements.

Numerosity and Impracticability of Joinder

"While no magic number satisfies this element, the plaintiff must show that it is extremely difficult or inconvenient to join all of the class members in the suit." *See Young v. Magnequench Int'l Inc.*, 188 F.R.D. 504, 506 (S.D. Ind. 1999). Although less than 21 individuals is generally insufficient to demonstrate numerosity,[9] *Evans v. Evans*, 818 F.Supp. 1215, 1219 (N.D. Ind. 1993), I may certify classes of less than 21 members in "special circumstances."[10] *Danis v. USN Communications, Inc.*, 189 F.R.D. 391, 399 (N.D. Ill. 1999).

---

[9] *See, e.g., Danis v. USN Communications, Inc.*, 189 F.R.D. 391, 399 (N.D. Ill. 1999) (15 members insufficient); *Lyne v. Arthur Anderson & Co.*, No. 91 C 1885, 1991 WL 247576, at *2 (N.D. Ill. 1991) (18 members insufficient); *CL-Alexanders Laing & Cruickshank v. Goldfeld*, 127 F.R.D. 454, 455-57 (S.D.N.Y. 1989) (25 members insufficient); *State Sec. Ins. Co. v. Frank B. Hall & Co., Inc.*, 95 F.R.D. 496, 498 (N.D. Ill. 1982) (18 members insufficient)

[10] *See, e.g., Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 members sufficient in employment discrimination case when the number of applications to positions was small because of the hospital's "notorious discriminatory policy"

Such "special circumstances" may take into account the following factors: (1) the nature of relief sought;[11] (2) the ability of class members to institute individual suits;[12] (3) judicial economy;[13] and (4) administrative difficulties involved in interpretation and joinder[14] such as whether the names and existence of potential members are unknown[15] or the geographical dispersion of potential members.[16] However, as to all these factors, "[c]onclusory allegations do not overcome the numerosity requirement." *Danis*, 189 F.R.D. at 400.

For the purposes of this motion, both parties agreed that the number of individuals who are potentially members of the putative class is approximately 13 individuals, and the number

---

and when individuals feared "possible reprisals should they seek to attain their rights"); *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996) (18 members sufficient when damages flowed from resolution of single question and when potential class members were geographically dispersed); *Rosario v. Cook County*, 101 F.R.D. 659, 661 (N.D. Ill. 1983) (20 members sufficient when the "administrative difficulty, delay and distraction involved in requiring" each of the class members to "intervene, join, or initiate a separate suit" was great and unwarranted and when future class members would be afforded injunctive relief sought by plaintiffs); *Allen v. Isaac*, 99 F.R.D. 45, 49, 53 (N.D. Ill. 1983) (17 members sufficient when class members were "scattered throughout the United States" and feared retaliation from employer if they sued individually); *Davy v. Sullivant*, 354 F.Supp. 1320, 1325 (M.D. Ala. 1973) (10 identified members sufficient when injunctive relief sought would benefit individuals other than the plaintiff class); *Dale Elecs., Inc. v. R.C.L. Elecs., Inc.*, 53 F.R.D. 531, 534 (D.N.H. 1971) (13 members sufficient when class members were dispersed over a large geographic area).

[11] *See Rosario*, 110 F.R.D. at 661; *Davy*, 354 F.Supp. at 1325.

[12] *See Gaspar*, 167 F.R.D. at 56; *Evans*, 818 F.Supp. at 1219; *Rosario*, 110 F.R.D. at 661; *Allen*, 99 F.R.D. at 53.

[13] *See Gaspar*, 167 F.R.D. at 56; *Evans*, 818 F.Supp. at 1219; *Rosario*, 110 F.R.D. at 661; *Allen*, 99 F.R.D. at 53.

[14] *See Rosario*, 110 F.R.D. at 661; *Allen*, 99 F.R.D. at 53.

[15] *See Danis*, 189 F.R.D. at 400; *Davy*, 354 F.Supp. at 1325.

[16] *See Gaspar*, 167 F.R.D. at 56; *Allen*, 99 F.R.D. at 53; *Davy*, 354 F.Supp. at 1325; *Dale*, 53 F.R.D. at 534.

may be between 10 and 17 individuals. Therefore, the number (at least for purposes of this motion) is within the range in which classes have been certified in special circumstances. Accordingly, I must examine the special circumstances of this class.

Regarding the nature of relief sought, Petitioner is seeking declaratory and injunctive relief which, if granted, will affect unascertainable individuals, such as potential future members. Accordingly, the future impacts of the relief requested weighs in favor of certifying a class. Several administrative difficulties also weigh in favor of certification. First, although the parties have agreed for the purposes of this motion that the number of individuals who are potentially members of the putative class is approximately 13 individuals (and may be between 10 and 17 individuals), the identity of any actual member is unknown. In addition, since the challenged ICE practice continues, the class may grow and change as more individuals are detained by the Chicago District in excess of six months after a final order of removal has been issued. Furthermore, potential class members are immigrants, incarcerated, likely indigent, and many do not speak English, thus hindering their ability to join this lawsuit. *See Fernandez-Roque v. Smith*, 539 F.Supp. 925, 946-47 (N.D. Ga. 1982) ("plaintiffs' indigency, incarceration, and inability to speak English" supported class certification). Finally, Petitioner alleges that class members are geographically dispersed in various jails throughout Illinois and adjoining states. Because of these administrative difficulties, it is extremely difficult or inconvenient to join all of the class members in the suit. In sum, therefore, these administrative difficulties along with the nature of relief sought lead me to conclude that joinder is impracticable for this case.[17]

---

[17] Petitioner additionally asserts that potential members are unlikely to institute individual suits because they lack the resources and the access to counsel necessary. Respondent, pointing to this Court's "extensive docket" of habeas actions and Kazarov's individual petition in particular, argues that unnamed petitioners face no significant impediment to bringing individual

Commonality

For class certification, only "one question of law or fact common to the class" is required. *In re VMS Sec. Litig.*, 136 F.R.D. 466, 473 (N.D. Ill. 1991). However, "some factual variations among class members' experiences will not defeat class certification" when the legal issues are the same for all. *McKenzie v. City of Chicago*, 175 F.R.D. 280, 286 (N.D. Ill. 1997) (citing *Rosario*, 963 F.2d at 1017). The central issue is the same for all when defendants have "engaged in standardized conduct toward members of the proposed class." *Id.* Accordingly, "[c]lass actions . . . cannot be defeated on commonality grounds solely because there are some factual variations among the claims of individual members." *Evans*, 818 F.Supp. at 1219. For example, in *Tonya K. by Diane K. v. Chicago Bd. of Educ.*, 551 F.Supp. 1107, 1108 (N.D. Ill. 1982), plaintiffs challenged the process by which educational placements of handicapped children were made. The Court found that the question of whether placement was completed in a timely manner was an appropriate one for class action. *Id.* at 1111. In doing so, the Court stated that "it is irrelevant for commonality purposes that class members are variously disabled or need either day or residential placement" because the Court was not evaluating the appropriateness of individual placement decisions; it was reviewing the process by which those decisions were made. *Id.* Similarly, in *Evans*, the Court stated:

> the issue presented by the Plaintiffs, whether the Process violated IDEA insofar as it imposes lengthy delays after development of an IEP, clearly presents a question of law

---

habeas actions. At best, this factor is a close class, neither supporting nor opposing certification. As for whether judicial economy is served by certification, Petitioner claims that it is because this case centers around the single issue of the lawfulness of the ICE's detainment procedures. Respondent counters that the relief requested will necessitate case-by-case determinations and thus not increase judicial economy. Once again, this is a close call. Ultimately, however, these factors are irrelevant because two factors support certification, and Petitioner need not demonstrate that all factors do.

12

> common to all class members. The Plaintiffs' challenge does not require this Court to
> make individual determinations concerning the necessity of a residential placement.
> Rather, the question is simply whether the Process, which is common to all class
> members, violates IDEA.

818 F.Supp. at 1219.

Respondent argues that a representative action is inappropriate because material factual differences are pervasive throughout the proposed class. However, Petitioner is not challenging the highly individual and inherently factually based decisions the Government eventually makes as to whether continuing detainment for each class member. Instead, Petitioner challenges the process used by ICE in making those decisions. Accordingly, the common question is whether ICE has appropriate procedures in place for ensuring that individuals are not detained outside of the rule set in *Zadvydas*. More specifically and for purposes of this representative action, I find that the specific common questions for which certification is appropriate are (1) whether Respondent has a practice of delaying adjudication of repatriation likelihood reviews for class members and/or (2) a practice of failing to give class members a meaningful opportunity to be heard on the repatriation likelihood issue.[18] However, whether Respondent has a practice of justifying continued detention on non-existing failures to cooperate or possibilities of return to home countries is not an appropriate question for class certification because it very clearly challenges the highly individual and inherently factually based decisions the Government

---

[18] Respondent argues that Petitioner has not pointed to a single class member who is currently being detained because Respondent has delayed in completing his repatriation likelihood review or who has been denied a meaningful opportunity to be heard on the repatriation likelihood issue. While this is true and while Petitioner may eventually be unable to point to any class member who fits these categories, that seems to be an issue for summary judgment rather than class certification.

13

eventually makes for each individual as to whether to continue detainment, and is thus outside the scope of Petitioner's proposed class.

Respondent further argues that a representative action is inappropriate because I cannot grant the injunctive relief Petitioner seeks on a class-wide basis – to immediately release all class members from immigration custody and to cease and desist from detaining members of the class after the end of the presumptively reasonable six month period after a final order of removal, pursuant to the rules and regulations currently enacted by Respondent – without ignoring *Zadvydas*'s explicit recognition that release of an alien after the presumptively reasonable six month period is not automatic. 533 U.S. at 701. Respondent cites *Wang v. Reno*, 862 F.Supp. 801, 811 (E.D.N.Y. 1994), for the proposition that class certification is inappropriate in a case in which injunctive habeas relief is requested. In *Wang*, the Court noted that "[t]o the extent that plaintiffs are seeking more than declaratory [relief], the habeas relief sought must be considered on an individual basis" and that "judicial efficiency would not be increased by class certification." *Id.* While individual habeas relief here may have to be determined on a case-by-case basis, which will hinder judicial economy, this in no way compels denial of class certification. To hold that it does would be inconsistent with both *Bijeol* and *Sero*, which have expressly permitted representative habeas actions in which petitioners sought and received some sort of injunctive habeas relief. In fact, in *Sero*, while the Second Circuit remanded part of the case back to the District Court for further determinations and disposition, one part of the case affirmed was the District Court's granting of bifurcated injunctive relief in terms of ordering release of certain incarcerated petitioners and ordering resentencing of others. This relief was certainly time-intensive, necessitated at least some case-by-case disposition for those for whom resentencing was ordered, and certainly did not serve judicial economy. Nonetheless, neither the

14

District Court nor the Second Circuit held that this relief necessitated denying class certification. Indeed, class certification has been granted when there are questions common to the class, despite the need for individual remedies for class members. *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980) ("The fact that individuals may also seek relief on the basis of facts peculiar to their individual cases does not deflect the thrust of this lawsuit.") Accordingly, the relief requested here does not require denying certification. While Respondent may be correct that the requested relief may be contrary to *Zadvydas*, I will cross that bridge if and when that becomes an issue.

Adequacy of Representation

In evaluating adequacy of representation, courts look at both the adequacy of the named plaintiffs in protecting the interests of the class members and the adequacy of plaintiffs' named counsel. *Retired Chicago Police Ass'n*, 7 F.3d at 598. A representative petitioner must be able to represent the interests of the class adequately. *See Gaspar*, 167 F.R.D. at 58. Class representatives must share interest and injury with class members in order to adequately protect their interests. *See Uhl v. Thoroughbred Tech. & Tel., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002).

Respondent does not dispute the capabilities of Petitioner's counsel here, but she does argue that Kazarov is not an adequate class representative petitioner because he is no longer a member of the proposed class. However, courts have found that a mooted plaintiff can satisfy the requirement of adequate representation necessary for class certification. *See Tonya K.*, 551 F.Supp. at 1112-13; *Dixon*, 537 F.Supp. at 992; *Green*, 513 F.Supp. at 975. In determining whether to grant certification, I must decide whether Kazarov "will adequately protect the interests of the class." *Sosna*, 419 U.S. at 403. A mooted petitioner will adequately represent the

15

interests of the class where it is "unlikely" that members of the proposed class "would have interests conflicting" with those advanced by the named plaintiff and "where the interests of that class have been competently urged at each level of the proceeding." *Id.* The first prong of this test (which is the prong at issue) assures that "the named plaintiffs' interests are not antagonistic to those of the class." *Tonya K.*, 551 F.Supp. at 1112. Here, Kazarov does not have interests adverse to those of the other class members. Both he and class members have allegedly been harmed by the unconstitutional government procedures and have the same interest in stopping the practices and procedures currently in place by the ICE. Accordingly, Kazarov can serve as an adequate representative for the class.

Rule 23(b)(2)

Having found that the proposed class satisfied the requirements of Rule 23(a), I must next determine whether it satisfies Rule 23(b)(2). *See Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 419 (N.D. Ill. 2003). To proceed under Rule 23(b)(2), Petitioner must establish that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." This rule does not require that all members of the class be aggrieved by the challenged conduct, but proponents of a Rule 23(b)(2) class must be able to demonstrate that the "conduct or lack of it which is subject to challenge be premised on a ground that is applicable to the entire class," and that the entry of declaratory or injunctive relief would remove a barrier or impediment common to the class. *See Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975).

Respondent argues that Petitioner's dues process and APA challenges to the regulations at issue here do not involve a question which, if resolved, would remove a common barrier to the

putative class members' quest for release from ICE custody, because each class member's detention status still would have to be determined on a case-by-case basis. Once again, however, Petitioner does not challenge individual detention decisions, but rather the procedures used by Respondent toward the class as a whole. Respondent has applied these same procedures to each class member and because injunctive and declaratory relief is sought, this class is maintainable as a class action under Rule 23(b)(2).

For the reasons above, Respondent's Motion to Dismiss Count I and II is GRANTED, and Petitioner's Motion for Class Certification is GRANTED subject to the modifications and limitations described above.

ENTER:

James B. Zagel
United States District Judge

DATE: 15 Dec 2003